UNITED STATES of America, Plaintiff-Appellee,

v.

Ted E. OAKES, Defendant-Appellant.

No. 76–1438.

United States Court of Appeals, Tenth Circuit.

Argued May 17, 1977.

Decided Oct. 25, 1977.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas

City, Kan., on the brief) for defendant-appellant.

Richard L. Hathaway, Asst. U. S. Atty., Kansas City, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief) for plaintiff-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

Appellant was convicted in the district court for the District of Kansas of knowingly possessing an unregistered machine gun in violation of 26 U.S.C. § 5861(d). The gun was purchased from appellant by an undercover agent for the Alcohol, Tobacco, and Firearms section of the United States Treasury Department. The agent posed as a firearms dealer who was supplying weapons to domestic political groups. Appellant met with the agent, usually at appellant's home, on numerous occasions, the two often spending hours discussing guns and politics. There is no question that the undercover agent was in the home by invitation and with appellant's consent.

The government agent purchased firearms from appellant on seven different occasions. One of these purchases involved the gun in question. The gun had at one time been in the possession of the Kansas City, Kansas police, having been given to them by appellant's wife after a marital dispute. When the gun was returned to appellant by the police the barrel was welded shut. At the time of the purchase by the government agent, however, the barrel had been cleared and the gun could have been made operable with relatively minor repairs.

On appeal Oakes asserts four grounds which allegedly require the reversal of his conviction. Two of these grounds involve constitutional issues.

## I.

■ Appellant argues that the agent's presence in his home for the purpose of gathering evidence of illegal possession of firearms was an unlawful search and seizure in violation of the fourth amendment. Appellant clearly has an arguable fourth amendment claim since the agent entered his home seeking to obtain evidence. The fact that there was no physical search of the house, in the sense of opening closets and drawers, or seizure of tangible evidence, is not determinative. The Supreme Court has made clear that the protections of the fourth amendment can be violated by guile as well as by force. See Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374.

The flaw in appellant's argument lies in the fact that the agent entered the house by invitation and took away nothing that was not voluntarily given or sold by appellant. The Supreme Court has addressed a virtually identical fact situation in Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312. That case involved an undercover narcotics agent who was invited into the defendant's house for the purpose of buying marihuana. The Court held that the subsequent introduction of the marihuana at trial was proper because the seizure of the drug did not violate the fourth amendment. Adopting the government's language, the Court stated that the case "'presents no question of the invasion of the privacy of a dwelling; the only statements repeated were those that were willingly made to the agent and the only things taken were the packets of marihuana voluntarily transferred to him.'" 385 U.S. at 212, 87 S.Ct. at 428.

■ Defendant attempts to avoid the force of Lewis by distinguishing its facts. He argues that while in Lewis the agent was specifically invited into the home for an illegal purpose, that is, the purchase of marihuana, in this case the agent came only to investigate and no firearms changed hands until the third visit. We do not believe that the purpose of either the defendant in extending the invitation, or the agent in accepting it is the critical factor. The fact is that the agent entered only at defendant's invitation and removed only that which was freely offered. "What a person knowingly exposes to the public

even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, *citing Lewis v. United States, supra.* We hold that the agent's actions here did not violate defendant's fourth amendment rights. *See United States v. Ressler*, 7 Cir., 536 F.2d 208, 211; *United States v. Raines*, 8 Cir., 536 F.2d 796, 799–800, *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293.

## II.

The second constitutional argument that appellant advances is that the prosecution here violated his right to bear arms guaranteed by the second amendment.[1] Defendant presents a long historical analysis of the amendment's background and purpose from which he concludes that every citizen has the absolute right to keep arms. This broad conclusion has long been rejected. *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206. However, as in his search and seizure argument, appellant attempts to avoid the seemingly dispositive nature of the case law by arguing a factual distinction. He contends that, even if the second amendment is construed to guarantee the right to bear arms only to an organized militia, he comes within the scope of the amendment. He points out that under Kans.Const. art. VIII, § 1, the state militia includes all "able-bodied male citizens between the ages of twenty-one and forty-five years . . . ." He further points out that he is a member of "Posse Comitatus, a militia-type organization registered with the state of Kansas."

■ The purpose of the second amendment as stated by the Supreme Court in *United States v. Miller, supra* at 178, 59 S.Ct. 816, was to preserve the effectiveness and assure the continuation of the state militia. The Court stated that the amendment must be interpreted and applied with

that purpose in view. *Id.* To apply the amendment so as to guarantee appellant's right to keep an unregistered firearm which has not been shown to have any connection to the militia, merely because he is technically a member of the Kansas militia, would be unjustifiable in terms of either logic or policy. This lack of justification is even more apparent when applied to appellant's membership in "Posse Comitatus," an apparently nongovernmental organization. We conclude, therefore, that this prosecution did not violate the second amendment.

■ In an expansion on his argument that the right of an individual to bear arms is fundamental, appellant argues that the right is protected by the ninth amendment. This issue was never raised in the district court and, therefore, absent exceptional circumstances or manifest injustice, will not be considered on appeal. *See Neu v. Grant*, 10 Cir., 548 F.2d 281, 287; *Gomes v. Williams*, 10 Cir., 420 F.2d 1364, 1367. We find no such circumstances or injustice here.

## III.

■ As we have earlier stated, the subject weapon had once been in the possession of the Kansas City police and then returned to appellant. Using this incident as a springboard appellant urges that he has been victimized by an authoritative action carrying an implicit representation that his possession of the weapon was lawful and concludes that the instant prosecution is barred by a theory of collateral estoppel. The argument is novel but unpersuasive for it totally ignores the undisputed fact that when the undercover agent bought the weapon the barrel, which was previously welded shut, was open and the gun could have been made operable with minor adjustments. This falls well within the statutory definition of a machine gun as defined in 26 U.S.C.A. § 5845(b)[2] regarding the condition of the weapon.

---

1. "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

2. (b) Machinegun.—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the

## IV.

The final contention made by appellant is that the subject weapon did not meet the statutory definition of a machine gun because it was constructed with two triggers and would not automate by a "single function of the trigger." The trial court received expert testimony offered by both the government and appellant concerning the construction of the gun and its method of function. The experts gave different opinions as to whether the weapon came within the statutory definition of the noted statute and the issue was presented to the jury as a question of fact. Implicit in the verdict of the jury is the factual finding that the gun shoots automatically with a single function of the trigger, an issue determined by credibility accorded to the government expert. Under the circumstances of the case we think the district court could well have ruled as a matter of law that the weapon met the statutory definition, there being no factual dispute as to the construction of the gun or its method of function. The gun was German-made and apparently unique in construction and operational activation as a fully automatic weapon. We consider the controversy between the experts' opinions to be one of semantics and not of facts under the circumstances of this case. A brief summary of the undisputed facts supports this view.

Contained within the trigger guard on the subject gun are two projections, the forward one being curved so as to fit the finger in a normal fashion. The experts agreed that this projection was a trigger. The second projection was seated behind the trigger and curved in a manner so that at its extremity it would be pushed if the trigger in front was fully pulled to contact. The pushing of the second projection fully automated the gun. The defense expert termed this second projection a "second trigger" and concluded that the gun was not within the cited statutory definition.

However, it is undisputed that the shooter could, by fully pulling the trigger, and it only, at the point of maximum leverage, obtain automation with a single trigger function. We are satisfied the gun was a machine gun within the statutory definition both in law and fact.

The judgment is affirmed.

trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.