**UNITED STATES of America, Appellee,**

v.

**Douglas John NELSEN, Appellant.**

No. 88–5169.

United States Court of Appeals,
Eighth Circuit.

Submitted July 1, 1988.

Decided Oct. 20, 1988.

Bruce H. Hanley, Minneapolis, Minn., for appellant.

Richard E. Vosepka, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HEANEY and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Douglas John Nelsen appeals from his convictions of violating the Switchblade Knife Act, 15 U.S.C. § 1242 (1982), as well as related convictions for the fraudulent importation of prohibited goods, 18 U.S.C.

§ 545 (1982). He argues that the Switchblade Knife Act, which forms either the direct basis or the foundation for all the charges, is unconstitutional. We are not persuaded by these arguments, and we affirm the convictions.

Nelsen became interested in switchblade knives at an early age. In 1983 he became convinced that the law prohibiting such knives was unconstitutional, and he began importing them from foreign countries for distribution through his mail order business, the Crowley Cutlery Company. The Customs Service was able to document numerous knife shipments to both Nelsen's home and his post office box. Nelsen was indicted, and raised his constitutional challenges to the Act during pretrial motions before the magistrate.[1] The magistrate recommended rejection of the challenges which the district court[2] adopted. Trial was held, and the jury returned a verdict of guilty on the charges now at issue.

The sole question before us is whether the district court erred in upholding the constitutionality of section 1242's prohibition of the transportation or distribution of switchblade knives in interstate commerce.[3] Nelsen advances three theories for invalidating the Act. First, he argues that the Act bears no rational relationship to any legitimate legislative goal, and therefore violates the due process clause of the fifth amendment. Second, he attempts to discover a fundamental right to bear arms in the second amendment. Finally, he asserts that the Act is so vague and overbroad that it violates due process.

■ Nelsen's first argument proposes a novel way for us to review the validity of congressional legislation. He begins by attempting to establish the "motive" behind the legislation, apparently assuming that all 535 lawmakers might form the same subjective expectations when voting for the Act. The motive he settles on is juvenile crime prevention: the legislative history of the Act makes repeated reference to the need for the control of youth violence. *See* S.Rep. No. 1980, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Admin. News 3435. He then lists the numerous uses of switchblade knives which are not connected with juvenile crime, specifically that they are helpful to outdoorsmen, electricians, women with long or fragile fingernails, or anyone else needing a knife that can be operated with one hand. Finally, he ties the two ideas together. In his view, the complete banning of switchblade knives is so unrelated to the goal of juvenile crime prevention that due process prohibits the ban for this purpose. In other words, Congress acted irrationally in trying to achieve its desired objectives.

Nelsen's arguments might be persuasive to a legislative body, but it is not for us to say whether Congress chose the wisest path to take. Nelsen would have us examine the legislative history to determine the "goals" of the statute in question, explore every conceivable alternative for accomplishing those goals, and nullify the decision of Congress if the least restrictive method of achievement was not chosen. We refuse this invitation. The power to decide the appropriate scope of economic and social regulation lies with the legislature, not with the courts. *See Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Opti-*

---

1. The Honorable Floyd E. Boline, United States Magistrate for the District of Minnesota.

2. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

3. Section 1242 provides:
   Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

Previous constitutional challenges to the Act have received little approval in other circuits. *See Crowley Cutlery Company v. United States,* 849 F.2d 273 (7th Cir.1988) (criticizing the same substantive due process arguments made in the present case); *Bingham, Ltd. v. Meese,* 817 F.2d 98 (11th Cir.1987) (per curiam) (summarily rejecting constitutional arguments against the Act); *United States v. Murphree,* 783 F.2d 605 (6th Cir.), *cert. denied,* 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986) (same).

*cal,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *United States v. Caroline Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *West Coast Hotel v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). So long as Congress has a reasonable basis for enacting a statute, we will not invalidate it under a due process analysis.

We are satisfied that Congress did have a reasonable basis for passing the Switchblade Knife Act. Congress stated its reasons for adopting the statute quite plainly. Switchblade knives were increasingly being used for criminal purposes, especially by young gang members. Some states had tried to regulate or ban the knives, but easy access to knives from other states through the mail order business continually frustrated such efforts. Congress decided to stop this interstate flow totally by using the commerce power. *See* S.Rep. No. 1980, 1958 U.S.Code Cong. & Admin.News at 3436–37. It did so in the face of objections that the new law would penalize legitimate users and unduly intrude into the regulatory powers of the states. *See id.* at 3438–40 (statements of Attorney General Rogers and Secretary of Commerce Weeks). Since Congress carefully considered all aspects of the problem, including the potential drawbacks of its solution, we cannot say that the final decision was irrational. We therefore reject Nelsen's substantive due process claim.

■ We also decline to hold that the Act violates the second amendment. Nelsen claims to find a fundamental right to keep and bear arms in that amendment, but this has not been the law for at least 100 years. In *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1876), the Supreme Court overturned criminal convictions based on interference with supposed second amendment rights. "The right there specified is that of 'bearing arms for a lawful purpose.' This is not a right granted by the Constitution." *Id.* at 553. Later

cases have analyzed the second amendment purely in terms of protecting state militias, rather than individual rights. *See, e.g., United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *United States v. Oakes,* 564 F.2d 384 (10th Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *United States v. Warin,* 530 F.2d 103 (6th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976). Nelsen has made no arguments that the Act would impair any state militia, and we do not see how such a claim could plausibly be made.

■ Finally, we reject Nelsen's claims that the Act is so vague and overbroad as to violate due process. Nelsen makes no serious argument that the Act interferes with the exercise of his protected rights, except the right to sell switchblade knives. We therefore hold that the Act does not suffer from overbreadth.

As for vagueness, we agree that criminal laws must be defined with reasonable specificity. To allow otherwise would give the government unacceptable discretion in enforcing the law. *See Papachristou v. Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). We do not believe, however, that the Act as construed would fail to put a man of ordinary caution on notice as to what its boundaries are.[4]

Nelsen argues that the Act might apply to almost any knife, but courts applying the Act have felt otherwise. *See, e.g., Precise Imports Corp. v. Kelly,* 378 F.2d 1014 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967) (imposing requirement that the object be designed primarily for use as a weapon); *Taylor v. McManus,* 661 F.Supp. 11 (E.D.Tenn.1986) (finding "butterfly" knives not covered by the Act). Nelsen's knives were of the traditional type, and no reasonable person could think the knives were not covered by the Act. Nelsen himself was concerned enough to attempt to mislead the authorities by labeling one shipment as "brass

---

**4.** Section 1241(b) provides the definition of a switchblade knife:

The term "switchblade knife" means any knife having a blade which opens automatically—

(1) by hand pressure applied to a button or other devise in the handle of the knife, or
(2) by operation of inertia, gravity, or both.

table corners." In view of these circumstances, we cannot say that the Act failed to warn Nelsen that his behavior was criminal.

Nelsen makes one nonconstitutional objection to his conviction, relating to the exclusion of certain evidence at trial by the district court. We have carefully considered this point, and hold that the district court did not abuse its discretion. Accordingly, we affirm the judgments of conviction entered by the district court.