Brian K. BLACKBURN, Plaintiff,

v.

James S. JANSEN, et al., Defendants.

No. 8:02CV275.

United States District Court,
D. Nebraska.

Jan. 14, 2003.

Brian K. Blackburn, Omaha, NE, pro se.

John C. Nimmer, Omaha, NE, for Plaintiff.

Jeffrey J. Lux, Douglas County Attorney's Office, Civil Division, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This matter is before the court on filing no. 12, the Motion to Dismiss filed by the defendants, Douglas County Attorney James S. Jansen and Douglas County Sheriff Timothy F. Dunning. The defendants have filed a brief (filing no. 13) in support of the motion to dismiss, and the plaintiff, Brian K. Blackburn, has filed a brief (filing no. 14)[1] in opposition to the motion.

In the Amended Complaint (filing no. 53), the plaintiff asserts that on or about November 14, 2001, he was arrested for assaulting his wife. At the time of the arrest, Sheriff Dunning seized, as evidence, four firearms belonging to the plaintiff. The County Attorney charged the plaintiff with third degree assault. However, subsequently the County Attorney dismissed the assault charge.

The plaintiff attempted to obtain a "release letter" from the County Attorney for return of the firearms, as Neb.Rev.Stat. § 29–820 authorizes return of seized property "on such showing as the law enforcement agency may deem adequate" after termination of a criminal case. The County Attorney refused to issue a release letter in light of the plaintiff's prior conviction, on or about May 14, 2001, of a misdemeanor crime of domestic violence, i.e., child abuse of the plaintiff's son. At a hearing on a motion by the plaintiff for Release of Seized Property, the Douglas County Court summarily overruled the plaintiff's motion for release of the firearms, upon the County Attorney's evidence that the plaintiff was prohibited by law from possessing the firearms pursuant to 18 U.S.C. §§ 921(a)(33), 922(g)(9). The Amended Complaint states that the decision by the County Court denying return of seized property is presently on appeal.

---

1. Until January 6, 2003, the plaintiff was represented by retained counsel. However, the plaintiff's attorney has obtained leave to withdraw (filing no. 18), and the plaintiff is now proceeding pro se.

In the above-entitled case, the plaintiff renews the claims he argued unsuccessfully before the Douglas County Court, i.e., that there were evidentiary defects in his conviction for child abuse[2] and that 18 U.S.C. § 922(g)(9) violates the Second, Fifth, and Eighth Amendments to the United States Constitution, as incorporated and made applicable to state actors by the Fourteenth Amendment. The plaintiff has sued the defendants in their individual and official capacities. In the First Cause of Action of the Amended Complaint, the plaintiff seeks return of the firearms, damages and attorney fees, pursuant to 42 U.S.C. § 1983. In the Second Cause of Action, the plaintiff requests a declaratory judgment.[3]

■ In filing no. 12, the defendants claim immunity insofar as each is sued in his individual capacity. First, if the plaintiff seeks to hold County Attorney Jansen responsible for Jansen's role in the prosecution of child abuse or assault charges against the plaintiff, such claims are barred by absolute prosecutorial immunity. Prosecutors have absolute immunity for initiating a prosecution and presenting the government's case, for conduct occurring in the courtroom, and for actions preliminary to the initiation of a prosecution and apart from the courtroom which relate to the prosecutor's role as advocate. *Buckley*

*v. Fitzsimmons*, 509 U.S. 259, 272–73, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The County Attorney withheld release of the plaintiff's firearms because he knew that possession of the firearms by the plaintiff would violate federal law in light of the plaintiff's previous conviction of a domestic-violence misdemeanor. Arguably, the prosecutor's determination that such possession would constitute a criminal offense is a prosecutorial function shielded by absolute prosecutorial immunity.

■ However, if the County Attorney lacks absolute immunity, he is nonetheless protected by qualified immunity from the plaintiff's claims for monetary relief. In his opposition brief, the plaintiff alleges that the County Attorney is entitled to no more than qualified immunity for the administrative function of refusing to issue a release letter. If so, and as to both defendants, then I find that the plaintiff's claims against the defendants, in their individual capacity, are barred by qualified immunity.

■ A government official, sued for damages in the official's individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the official violated a "clearly established" federal statutory or constitutional right of the plaintiff. For a right to

2. Insofar as the Amended Complaint may be construed as an attempt to challenge the unfavorable result in the plaintiff's prosecution for child abuse, such review is not available in the federal district courts. A federal district court does not possess authority to review or alter final judgments of a state court judicial proceeding. Appellate jurisdiction over state court decisions, even when the challenge to the state court's actions involves federal constitutional issues, lies exclusively in the United States Supreme Court. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Fed-

eral district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486, 103 S.Ct. 1303. Therefore, insofar as the plaintiff seeks in this case to challenge his conviction for a domestic-violence misdemeanor, the "Rooker–Feldman doctrine" bars this court from correcting a state court judgment, and no relief is available in this court to do so.

3. This Memorandum and Order shall serve as the requested declaratory judgment.

be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known: (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987): "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. 3034. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted).

The Supreme Court in *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002), recently described "clearly established law" as follows:

> As we have explained, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. at 206, 121 S.Ct. 2151.... For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell [v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 ... (1987).

As further explained in *Hope v. Pelzer*, a state official charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right. *Id.* at 2515. The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages action under 42 U.S.C. § 1983. *Id.* at 2515–16. Thus, the "salient question" is whether the state of the law when the defendants acted gave the defendants "fair warning" that their conduct was unconstitutional. *Id.* at 2511.

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.'" *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). As the threshold inquiry in a qualified immunity analysis, the court must consider whether the plaintiff's allegations, if assumed to be true, establish a constitutional violation. *Id.* at 2513, *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). I find that the plaintiff has failed to state a constitutional violation, as discussed below.

Furthermore, even if the plaintiff's allegations were to be considered sufficient to state a constitutional violation, the next question in the qualified immunity inquiry is "whether it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 201–02, 121 S.Ct. 2151. Qualified immunity turns on whether an officer could, or could not, have held an objectively reasonable belief in the legality of the challenged conduct. See, e.g., *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999): "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action

generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (Citations omitted.) "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed.... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " *Smithson v. Aldrich,* 235 F.3d 1058, 1061 (8th Cir.2000). See also *Figg v. Schroeder,* 312 F.3d 625, 636 (4th Cir.2002): "Under the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " (Citation omitted.)

■ The Second Amendment does not confer an absolute and unfettered right on the plaintiff to bear arms. See, e.g., *United States v. Nelsen,* 859 F.2d 1318, 1320 (8th Cir.1988):

> In the last 100 years, cases have analyzed the second amendment purely in terms of protecting state militias, rather than individual rights. See, e.g., *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 ... (1939); *United States v. Oakes,* 564 F.2d 384 (10th Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 ... (1978); *United States v. Warin,* 530 F.2d 103 (6th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 ... (1976). [The defendant] has made no arguments that the [Switchblade Knife] Act would impair any state militia, and we do not see how such a claim could plausibly be made.

Therefore, absent "a fact-specific showing that possession of the regulated weapons bears a 'reasonable relationship to the preservation or efficiency of a well-regulated militia,' " the Second Amendment is not implicated. *United States v. Farrell,* 69 F.3d 891, 893–94 (8th Cir.1995) *cert. denied,* 516 U.S. 1181, 116 S.Ct. 1283, 134 L.Ed.2d 228 (1996). See also *Gross v. Norton,* 120 F.3d 877, 878 (8th Cir.1997), *citing United States v. Hale,* 978 F.2d 1016, 1020 (8th Cir.1992) (Second Amendment only protects weapon possession reasonably related to preservation of militia). The plaintiff has made no showing whatsoever regarding a relationship between his firearms possession and the preservation of a militia.

■ The plaintiff's claims based on the alleged unconstitutionality of 18 U.S.C. § 922(g)(9) must fail. See, e.g., *United States v. Lewis,* 236 F.3d 948, (8th Cir. 2001): "Defendant challenges the constitutionality of Section 922(g)(9).... Under Section 922(g)(9), a person convicted of a domestic-violence misdemeanor loses the right to carry a gun, while people convicted of other misdemeanors do not...." *Id.* at 949. 18 U.S.C. § 922(g)(9) does not violate the Equal Protection Clause, the Commerce Clause, the Second Amendment or the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* at 949–50.

> The argument that the statute violates the Second Amendment is also without merit. E.g., *United States v. Smith,* *supra,* 171 F.3d at 624; *United States v. Turcotte,* 558 F.2d 893, 895 (8th Cir. 1977) (per curiam). We also reject any argument based on the Cruel and Unusual Punishment Clause of the Eighth Amendment. See *United States v. Jester,* 139 F.3d 1168, 1170–71 (7th Cir.1998) (punishment is not based solely on status as a convict, but also on voluntary act of possession of a firearm).

*Id.* at 950.[4] I conclude, also, that the constitutional rights claimed by the plaintiff in the context of this case are by no means "clearly established."

██ As for the claims against the defendants in their official capacity, a suit against a public employee in his or her official capacity is merely a suit against the public employer. See *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, a claim against an officer, in his official capacity, is in reality a claim against the entity that employs the officer, i.e., Douglas County, Nebraska, in this case. See *Parrish v. Luckie,* 963 F.2d 201, 203 n. 1 (8th Cir. 1992): "Suits against persons in their official capacity are just another method of filing suit against the entity.... A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity...." Accord *Eagle v. Morgan,* 88 F.3d 620, 629 n. 5 (8th Cir.1996), *quoting Kentucky v. Graham:* "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."

I have determined that the plaintiff's factual allegations, even when assumed to be true, fail to establish a constitutional violation. Therefore, regarding the claims against the defendants in their official capacity, see *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (a finding that a defendant officer inflicted no constitutional injury on the plaintiff removes any basis for liability against the political subdivision employing the officer).

THEREFORE, IT IS ORDERED:

1. That filing no. 12, the Motion to Dismiss filed by the defendants, Douglas County Attorney James S. Jansen and Douglas County Sheriff Timothy F. Dunning, is granted;

2. That this action and the plaintiff's Amended Complaint are dismissed with prejudice; and

3. That a separate judgment will be entered in accordance with this Memorandum and Order.

JUDGMENT

In accordance with the Memorandum and Order entered on this date,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That judgment is entered in favor of the defendants, Douglas County Attorney James S. Jansen and Douglas County Sheriff Timothy F. Dunning, in their individual and official capacities, and against the plaintiff, Brian K. Blackburn, on the plaintiff's Amended Complaint; and

2. That this action and the plaintiff's Amended Complaint are dismissed with prejudice.

**4.** I also decline to hold that when a governmental entity confiscates weapons illegally in the plaintiff's possession, he should be compensated for the "taking" of those weapons.