**UNITED STATES of America**

v.

**Simpson MORROW.**

**No. CR 93–AR–186–S.**

United States District Court,
N.D. Alabama, S.D.

Oct. 12, 1993.

David R Arendall, Arendall & O'Kelley, Birmingham, AL, for defendant.

John E Ott, Claude Harris, U.S. Attys., Birmingham, AL, for U.S.

*MEMORANDUM OPINION*

ACKER, District Judge.

The court has for consideration the motion filed on October 6, 1993, by defendant, Simpson Morrow, after the above-entitled case was called for trial. The motion prays for a dismissal of this one-count indictment which charges Morrow with the knowing possession of a firearm in a school zone. Although this motion was filed after the expi-

ration of the time provided in the pre-trial order for filing such a motion, the court, in an exercise of its discretion, has allowed the belated filing because the statute invoked by the grand jury, namely, 18 U.S.C. § 922(q), was held unconstitutional by the Fifth Circuit on September 15, 1993, in *United States v. Lopez,* 2 F.3d 1342 (5th Cir.1993). This statute, which did not become the law until 1990, is entitled "The Gun–Free School Zones Act." Although the Fifth Circuit's September 15 opinion does not bind this court, this court finds the *Lopez* reasoning persuasive and therefore finds Morrow's motion well taken.

■ In *Lopez,* the Fifth Circuit was not very kind to Congress. Like the Fifth Circuit, this court suspects that Congress expects courts invariably to presume that Congress intends to hang any and all new federal legislation which purports to control activity within the several states on the so-called Commerce Clause, without Congress having to say so. After all, has not everyone been conditioned to believe that there is nothing which moves or has ever moved which does not support an invocation of the Commerce Clause as the means for conferring federal jurisdiction and control over the activity and/or problem that Congress wishes to govern and/or solve. The air in the soccer ball used on the school playground, or a molecule or two of the milk dispensed in the school cafeteria (especially if the milk is homogenized) undoubtedly crossed some state line before arriving at the school. But this court joins the Fifth Circuit in expecting Congress at least to share with the public, and with the overworked federal courts upon which Congress thrusts the enforcement of an accelerating volume of federal crime fighting statutes, some articulated, rational, constitutional basis for the federal government's assumption of jurisdiction over the perceived problem, particularly over an area historically governed by states or municipalities under local laws. Although the Congress has systematically whittled away at the old idea of the superiority inherent in the local solution of problems, the principle of federalism still has enough vitality to demand an explanation from Congress when Congress finds that the states' various means of handling a particular societal problem are so ineffectual as to be moribund and in need of replacement by an overarching new federal remedy.

If Congress in 18 U.S.C. § 921(a)(25) had limited the definition of "school zone" to areas surrounding only those *public* schools that receive federal dollars, this court might logically deduce that Congress intended that federal control over "school zones" be tied to the federal money. Such a rationale would not be unusual and would make the statute constitutional. But here Congress defined "school zone" to include *parochial* schools that cannot receive federal dollars because of the First Amendment's so-called Establishment Clause, so there is no way to indulge such a presumption in this case. If Congress wants to protect parochial school children from guns within 1,000 feet of their school, it will have to do better than this.

■ This court believes, as the Fifth Circuit apparently does, that the reach of the Commerce Clause is not infinite, especially when there is a total absence of Congressional expression to indicate that its proscription in § 922(q) relates to "commerce between the several states." Therefore, this court arrives at the same conclusion the Fifth Circuit reached, namely, that § 922(q) is unconstitutional. Unless Congress spells out clearly a proper exercise of power to forbid it, not every little old lady carrying a licensed gun for self-protection can be exposed to a federal felony prosecution just because she fails to measure the shortest distance between her usual vehicular route between home and the grocery store to the nearest point on the local school ground in order to ascertain whether her vehicle will come closer than 1,000 feet to the school. Today, unfortunately, little old ladies carry pistols in their purses through war zones, which include school zones. In fact, a school often constitutes the very center of the war zone. Inasmuch as "ignorance of the law is no excuse," every dove hunter, in order to stay out of a federal penitentiary, would need to carry a surveying instrument with him in the event there happens to be an elementary or secondary school, public, private or parochial, anywhere near the publicly, heavily travelled

route to the dove field. Another bizarre example of an application of this statute by its terms may be worth mentioning. If a backwoodsman had lived in his rustic retreat for 50 years, his trusty hunting rifle hanging over the fireplace the entire time, and suburbia encroaches, creating enough student population to justify the construction of a private grammar school in the deep woods next door to him, he would have to choose among (1) getting rid of his rifle, (2) moving, or (3) going to jail.

Although most guns have at some time traveled in interstate commerce, this particular statute conspicuously does not limit its reach to interstate guns. It purports to criminalize the carrying of an operable dueling pistol replica totally handcrafted out of local materials in somebody's basement. Congress may be able to invent a convincing relationship between the proscription in § 922(q) and its right to regulate interstate commerce, but this court should not be called upon to dream it up for Congress. A generalized salutary purpose is simply not enough to justify the creation of a new federal crime. Liking the way "Gun–Free School Zones" rolls off the tongue does not make § 922(q) constitutional.

A separate order granting Morrow's motion, without prejudice to the right of the United States to appeal from the order of dismissal, will be entered.