### UNITED STATES of America

v.

### Darnell HOLLAND.

### Crim. No. 92–146.

United States District Court,
E.D. Pennsylvania.

Oct. 13, 1993.

Wendy A. Bostwick, Nancy B. Winter, Tamara Kessler, Neil Murray, Eric Sitarchuk, Asst. U.S. Attys., Philadelphia, PA, for U.S.

Claire Rauscher, Laura Aldir Hernandez, Stephen Marley, Defender Assn. of Philadelphia, Philadelphia, PA, for Holland.

### MEMORANDUM

JAMES McGIRR KELLY, District Judge.

Presently before the court is Defendant Darnell Holland's Motion to Dismiss Count Two of the Indictment which charges him with knowing possession of a firearm in a school zone in violation of 18 U.S.C. § 922(q)(1)(a).[1] Defendant moves for dismissal of this count on the grounds that 18 U.S.C. § 922(q), also known as the Gun–Free School Zones Act of 1990 ("School Zones Act") is unconstitutional. Plaintiff, the United States of America, filed a response in opposition to Defendant's Motion to Dismiss.

*Parties' Arguments*

Defendant first argues that this Act intrudes on an area, education, normally left to the states' regulation. Thus, it violates the principle that the federal government's powers are limited and enumerated. Defendant also argues that the Act violates the 10th Amendment both by its intrusion into the area of education and by its needless and

---

1. 18 U.S.C. § 922(q)(1)(a) makes it a federal crime "knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."

inappropriate overriding of state firearm laws. Finally, Defendant argues that the Act cannot be sustained under the Commerce Clause because "there is no finding, legislative history, or evidence" which would show that the Act is a proper exercise of Congressional power under the Commerce Clause. *United States v. Lopez,* 2 F.3d 1342 (5th Cir.1993).

The government argues that the Act is constitutional under the Commerce Clause because Congress has consistently found a firm link between firearms as a class and interstate commerce, because Congress' power to regulate firearms extends even to intrastate situations and because the business of education affects interstate commerce.

*Analysis*

 In reviewing the validity of a statute under the Commerce Clause, the court must determine whether Congress could reasonably find that the class of regulated activity affects interstate commerce. *Perez v. United States,* 402 U.S. 146, 152–56, 91 S.Ct. 1357, 1360–62, 28 L.Ed.2d 686 (1971). Congress need not make specific findings of fact to support its conclusion that a class of activity affects interstate commerce. *Id.* at 156, 91 S.Ct. at 1362. Instead, Congressional action may be supported by legislative history showing Congress had information that the regulated class of activity affected commerce. *Id.*

Legislative history indicates that Congress had ample information that firearms possession affected interstate commerce when it enacted the 1968 Omnibus Crime Control and Safe Streets Act ("1968 Act"). At that time, Congress was responding to national concern.[2] Congress made the following express findings regarding the nexus between firearms regulation and interstate commerce:

(1) that there is a widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that

the existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power;

. . . .

(3) that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem be properly deal with, and effective State and local regulation of this traffic be made possible.

Pub.L. No. 90–351 § 901(a), 82 Stat. 197, 225 (1968).

In 1990, Congress added the School Zones Act to the list of activities proscribed in 18 U.S.C. § 922 as part of the Comprehensive Crime Control Act. The School Zones Act was a response to the outrage caused by increased numbers of killings of schoolchildren resulting from the presence of guns on school property. *See* Hearings on H.R. 3757 Before the Subcomm. on Crime of the House Comm. on the Judiciary, 101st Cong.2d Sess., at 10 (1990). Although there is no legislative history on this Act, a House Report outlined the purposes of the Comprehensive Act. These echo the concerns articulated in 1968:

H.R. 5269, the "Comprehensive Crime Control Act of 1990" is intended to provide a legislative response to various aspects of the problem of crime in the United States. The damage inflicted by criminals—whether it be physical, emotional, or monetary—takes a heavy toll on our society. Ultimately, each of our citizens is a victim of such activity.

H.Rep. No. 101–681(I), reprinted at 1990 U.S.C.C.A.N. 6472, 6473.

 This legislative history is evidence that Congress found that the regulated class of firearms had a substantial affect on inter-

---

**2.** Handguns, rifles, and shotguns have been the chosen means to execute three-quarters of a million people in the United States since 1900. The use of firearms in violent crimes continues to increase today. Statistics indicate that 50 lives are destroyed by firearms each day. In the 13 months ending in September 1967 guns were involved in more than 6,500 murders, 10,000 suicides, 2,600 accidental deaths, 43,500 aggravated assaults, and 50,000 robberies. No civilized society can ignore the malignancy which this senseless slaughter reflects. 1968 U.S.Code Cong. & Admin.News at 4410–4435.

state commerce.[3] Therefore, Congress did not necessarily need to specify an interstate nexus requirement in each subsection of the Act. Furthermore, even though the School Zones Act had no interstate nexus requirement, it is implicit that possession of firearms does not cease to affect commerce merely because it happens in a school zone. *United States v. McDougherty*, 920 F.2d 569, 572 (9th Cir.1990), *cert. denied* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1990).

In addition, I find that Congress' authority to regulate firearms in a school zone is analogous to its authority to regulate controlled substances in a school zone. *See* 21 U.S.C. § 860 (1993) ("Schoolyard Drug Act"). The two Acts are similar. Both regulate dangerous activities in a school zone. Neither specifically requires a nexus with interstate commerce. Both rest on findings that the controlled activity has a substantial effect on interstate commerce. Congress determined that drug trafficking affects interstate commerce in that statute itself. 21 U.S.C. § 801 (1993). Section 801 contains extensive and specific findings of these effects. These findings are similar to the legislative history findings made by Congress in enacting the 1968 Act, to which the School Zones Act was added in 1990. Like the School Zones Act, the Schoolyard Drug Act contains no interstate commerce nexus requirement. Yet courts have upheld Congress' authority in passing that statute. *See, e.g., McDougherty*, 920 F.2d at 572. The *McDougherty* court also found irrelevant the fact that schools were typically a matter of local concern, since the statute did not regulate the schools but merely increased the punishment for those selling drugs near schools. *Id.* at 572 n. 2.

Courts have upheld two other subsections of Section 922 involving only intrastate activity. Section 922(a), which makes it illegal for an unlicensed dealer to sell firearms intrastate, has been held constitutional under the Commerce Clause by several circuit courts. *See, e.g., United States v. King*, 532 F.2d 505, 510 (5th Cir.1976), *cert. denied* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). Similarly, section 922(*o* ), which regulates the possession of machine guns and has no interstate requirement, has been upheld. Both the 8th and 9th Circuits held that Congress could reasonably have concluded from the number of persons killed by firearms that firearm possession affects the national economy, if only through the insurance industry. *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993); *United States v. Evans*, 928 F.2d 858, 862 (9th Cir.1991).

*Conclusion*

I find that there is sufficient evidence that, in enacting the School Zones Act, Congress could reasonably have found that possession of firearms in a school zone affects interstate commerce. The Act is, therefore, a proper exercise of Congressional authority under the Commerce Clause. Defendant's Motion to Dismiss Count Two is denied.

---

3. In a pair of cases arising under the 1968 Act, the Supreme Court left open whether, upon appropriate findings and a different statute, Congress could regulate *possession* of firearms. *United States v. Bass*, 404 U.S. 336, 339 n. 4, 92 S.Ct. 515, 518 n. 4, 30 L.Ed.2d 488 (1971); *Scarborough v. United States*, 431 U.S. 563, 575 n. 12, 97 S.Ct. 1963, 1969 n. 12, 52 L.Ed.2d 582 (1977). The statutory language at issue in those cases made it a criminal offense for a felon "to receive, possess, or transport in commerce or affecting commerce any firearm." 18 U.S.C.App. § 1202(a)(1) (superseded by Pub.L. 99–308, § 104(b), May 19, 1986, 100 Stat. 459).

Based on the ambiguous language, the *Bass* court held that, in pure possession cases involving firearms, the government had to prove a nexus to commerce. *Id.* 404 U.S. at 348–49, 92 S.Ct. at 522–23. In *Scarborough*, the Court held that the government could satisfy the nexus requirement by proving that a firearm had at some time travelled in interstate commerce 431 U.S. at 575, 97 S.Ct. at 1969. The Court also noted that the nexus requirement might not be required if the statute in question clearly indicated Congress' intent to dispense with the nexus requirement. *Id.*