**UNITED STATES of America,**

v.

**Aaron Tremayne DANIELS.**

**No. CR 93–AR–167–S.**

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 7, 1995.

W. James Ellison, Stephen H. Jones, Birmingham, AL, for Daniels.

Adolph J. Dean, Jr., Walter Braswell, Acting U.S. Attys., Birmingham, AL, for U.S.

---

## MEMORANDUM OPINION

ACKER, District Judge.

The above case presents an interesting combination of procedural and constitutional questions.

This court sentenced Aaron Tremayne Daniels on September 29, 1993, for a violation of 18 U.S.C. § 922(q)(1)(A), and sentenced him to probation. Two weeks later, on October 12, 1993, this court in *United States v. Morrow*, 834 F.Supp. 364 (N.D.Ala. 1993), held that 18 U.S.C. § 922(q)(1)(A) is unconstitutional. This court's opinion in *Morrow* was appealed by the United States to the Eleventh Circuit, which is holding up its decision on it awaiting instruction from the Supreme Court in *United States v. Lopez*, in which that court granted a petition for writ of certiorari directed to the Fifth Circuit for the purpose of reviewing the Fifth's opinion in *Lopez* found at 2 F.3d 1342 (5th Cir. 1993), upon which this court predominately relied in *Morrow*.

A reconsideration of this court's conviction of Daniels is now forced by the filing of a petition to revoke probation for Daniels' alleged violations of certain terms of his probation. In response to the petition to revoke, Daniels, represented by new appointed counsel, has moved to vacate his sentence and to dismiss the indictment, citing *Morrow* and *Lopez*. The issues in the case have been well briefed by both parties and were orally argued on February 3, 1995.

It is incumbent on courts to apply the same principles of law alike to all litigants, unless and until those principles of law change. There was no change in the law between September 29, 1993, when Daniels was sentenced, and October 12, 1993, when *Morrow* was exonerated, the only difference being this court's absence of knowledge of *Lopez* on September 29, 1993 and its knowledge of *Lopez* on October 12, 1993.

The United States first points to the fact that in the formal plea agreement signed by Daniels on September 14, 1993, he said:

Unless this plea is rejected or withdrawn, the defendant thereby waives and gives up any and all motions, defenses, objections or requests which have been made or raised, or could assert hereafter, to the Court's entry of judgment against and imposition of a sentence upon consistent terms with this Agreement. Defendant further waives and gives upon the right to appeal or collaterally attack the conviction and sentence based upon any of the above.

The United States argues that, literally construed, this language precludes Daniels' present motion purporting to collaterally attack his conviction. This court agrees that the language in the plea agreement is as broad as it could possibly be. This court believes, however, that the Fifth Circuit was not only right in *Lopez* but that it was right in *United States v. Knowles*, 29 F.3d 947 (5th Cir.1994), which stands for the proposition that the unconstitutionality of a statute [incidentally, the Gun Free School Zones Act] upon which a conviction is based is not something that can be casually waived. The Fifth Circuit said in *Knowles*:

"Waiver" in this context is the 'intentional relinquishment or abandonment of a known right.'"

*Id.* at 951 n. 2.

\* \* \* \* \* \*

[T]he novelty of our decision in *Lopez* also militates in favor of allowing Knowles to raise a *Lopez*-based argument for the first time here on direct appeal. *Cf. Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" on direct appeal and may thus raise it in a habeas corpus proceeding). It is also evident that this error affected the outcome of the proceedings below. Had the *Lopez* argument been raised in the district court, it should have resulted in the dismissal of the Gun Free School Zones Act count from Knowles's indictment. Finally, *we agree that our failure to address Knowles's challenge to the constitutionality of the Gun Free School Zones Act would seriously affect the fairness, integrity, and public reputation of judicial proceedings.* Accordingly, since this Court found in *Lo-*

*pez* that the Gun Free School Zones Act is unconstitutional, we must conclude that Knowles's conviction based on that Act must be reversed.

*Id.* at 951–52. (emphasis supplied). On September 29, 1993, Daniels was blissfully unaware of the serious constitutional question that had been answered in *Lopez* and would be addressed two weeks later in *Morrow.* Perhaps as good, if not a better expression, of the principle here applicable comes from *U.S. v. Jacobson,* 15 F.3d 19 (2d Cir.1994), as follows:

Turning to the merits of the appeal, we believe that Kogut did not waive his right to appeal on the grounds specified. Although *an agreement not to appeal a sentence* within the agreed Guidelines range *is enforceable, United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir. (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992), *we see nothing in such an agreement that waives the right to appeal from an arguably unconstitutional* use of naturalized status as the basis for a sentence.

The pertinent paragraph, which we set out in the margin, is concerned with "Guidelines adjustments, enhancements, or calculations." The right to appeal is waived so long as the sentence is within the prescribed range "even should the Court . . . reach that sentencing range by a Guidelines analysis different from that set out above." *Given that a waiver of the right not to be sentenced on the basis of a constitutionally impermissible factor may be invalid, see United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992) ("a defendant could not be said to have waived his right to appellate review of a sentence . . . based on a constitutionally impermissible factor such as race"), we read the agreement narrowly and hold that the present appeal, which raises no Guidelines issues, has not been waived.

15 F.3d at 22, 23 (emphasis supplied). If Daniels had been informed on September 29, 1993, during the colloquy leading up to his plea, that he was being asked to waive any question about the constitutionality of the Gun Free School Zones Act, *when the question had already been answered in his favor by the Fifth Circuit,* it is inconceivable that he would knowingly have executed such a "waiver."

Understandably unwilling to place all of its eggs in the "waiver" basket, the United States glowingly predicts that the Supreme Court will reverse the Fifth in *Lopez.* To the contrary, Daniels expects an affirmance of *Lopez.* If this court were called on to predict the Supreme Court in *Lopez,* a reading of the news reports of the oral argument there may be more instructive than a reading of the briefs filed there. Lyle Denniston, who reports on Supreme Court matters for The Baltimore Sun, and who is an adjunct professor of law at Georgetown University Law Center, heard the arguments in *Lopez* and wrote an article after hearing them. He described them this way:

A lawyer trying to get the notably cautious Supreme Court to endorse broad constitutional power for an arm of the government must make it unmistakably clear that there would be significant limits that would keep that power in check. But U.S. solicitor general Drew Days, III, arguing *U.S. v. Lopez,* failed to leave the Court with any such assurances as he recklessly pursued sweeping authority for Congress to control crime.

\*     \*     \*     \*     \*     \*

Days, seeking to resuscitate the act [Gun Free School Zones Act], promptly stirred deep skepticism among the justices with the sweep of his argument. Justice Sandra Day O'Connor began by asking whether "the simple possession of something at or near a school is commerce at all." When Days said it was, O'Connor disagreed, adding: "If this is covered, what's left of enumerated powers? What is there that Congress could not do, under this rubric, if you are correct?"

\*     \*     \*     \*     \*     \*

Next, Justice Ruth Bader Ginsburg wondered if Days were arguing that "all violent crime, if Congress so desired, could be placed under a federal wing" on the theory that all violent crime affected interstate

commerce. The solicitor general said that "it may be possible for Congress to do that under the commerce power."

James M. Maloney anticipated the tenor of the oral argument in his pointed article, which strongly takes the *Lopez* and *Morrow* viewpoint. *See* SHOOTING FOR AN OMNIPOTENT CONGRESS: THE CONSTITUTIONALITY OF FEDERAL REGULATION OF INTRASTATE FIREARMS POSSESSION, 62 FORD.L.REV. 1975 (1994).

If this court could do it, it would delay answering the questions here presented by Daniels and by the United States until the Supreme Court decides *Lopez*, but such a postponement would be improper under the circumstances. In fact, if this court had realized the circumstances sooner, it would have acted *sua sponte*. Daniels must face revocation, or he must go free, subject, of course, to the right of the United States to appeal as it did in *Lopez* and in *Morrow*. This court cannot revoke a probationary sentence that never should have been imposed in the first place.

All things considered, the court will, by separate order, grant Daniels' motion, rendering moot the petition for revocation.